# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

TRANSPORT FUNDING, LLC,

    Plaintiff,

v.

HVH TRANSPORTATION, INC.,

    Defendant.

Case No. 2:17-CV-2106-JAR-GLR

## MEMORANDUM AND ORDER

    Plaintiff Transport Funding, LLC ("Transport Funding") brought this action against Defendant HVH Transportation, Inc. ("HVH"), alleging breach of contract stemming from a dispute over a guaranty agreement. Before the Court is Defendant's Motion to Dismiss or, in the Alternative, to Change Venue (Doc. 4), alleging improper venue and, alternatively, requesting transfer of this matter to the United States District Court for the District of Colorado or the Middle District of North Carolina. The motion is fully briefed and the Court is prepared to rule. As described more fully below, the Court denies the motion to dismiss and, in its discretion, grants the motion to transfer this case to the United States District Court for the District of Colorado.

**I.**     **Legal Standard**

    Under Fed. R. Civ. P. 12(b)(3), defendants may request dismissal for improper venue. When a defendant challenges venue, the plaintiff bears the burden of showing that venue is proper.[1] In a motion to dismiss for improper venue, the plaintiff is only required to make a prima

---

[1] *Multi-Media Int'l, LLC v. Promag Retail Servs., LLC,* 343 F. Supp. 2d 1024, 1033 (D. Kan. 2004); *Value Chain Sols., LLC v. Quality One Wireless, LLC,* No. 09-2586-JAR, 2010 WL 1643690, at *6 (D. Kan. Apr. 20, 2010).

facie showing that venue is proper to avoid dismissal.[2] Allegations in a complaint "must be taken as true to the extent they are uncontroverted by the defendant's affidavits. If the parties present conflicting affidavits, all factual disputes must be resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party."[3] "However, only the well plead facts of the plaintiff's complaint, as distinguished from mere conclusory allegations, must be accepted as true."[4]

Transport Funding asserts that venue is proper here under 28 U.S.C. § 1391(b)(2). Under that statute, a party may bring a civil action in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred."[5] Venue under this statute "is not limited to the district with the *most* substantial events or omissions."[6] Instead, § 1392(b)(2) "contemplates that venue can be appropriate in more than one district . . . [and] permits venue in multiple judicial districts as long as a substantial part of the underlying events took place in those districts."[7]

The Tenth Circuit has promulgated a two-part test for reviewing challenges to venue under § 1392(b)(2).[8] First, the court "examine[s] the nature of the plaintiff's claims and the acts or omissions underlying those claims."[9] Second, the court determines "whether substantial 'events material to those claims occurred' in the forum district."[10] To satisfy the substantiality

---

[2] *Mohr v. Margolis, Ainsworth & Kinlaw Consulting, Inc.,* 434 F. Supp. 2d 1051, 1058 (D. Kan. 2006).
[3] *Wentz v. Memery Crystal,* 55 F.3d 1503, 1505 (10th Cir. 1995) (internal quotation marks omitted).
[4] *Id.*
[5] 28 U.S.C. § 1391(b)(2).
[6] *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.,* 618 F.3d 1153, 1165 (10th Cir. 2010) (citations omitted).
[7] *Id.* at 1166 (quoting *Gulf Ins. Co. v. Glasbrenner,* 417 F.3d 353, 256 (2d Cir. 2005)).
[8] *Id.*
[9] *Id.* (citations omitted).
[10] *Id.* (quoting *Gulf Ins.,* 417 F.3d at 357 (further citations omitted)).

requirement, a plaintiff must make a showing of "acts and omissions that have a close nexus to the alleged claims."[11]

## II. Background

On or about February 12, 2014, HVH entered into a Master Guaranty Agreement (the "Agreement") with Transport Funding and VFS Leasing, Co. ("VFS").[12] Pursuant to the Agreement, Transport Funding agreed to extend credit to independent contractors/operators ("Operators") of trucks who would then use the truck to transport product on behalf of HVH. Each of the Operators would enter into a separate lease agreement with VFS, who would then assign the lease to Transport Funding. The Agreement states that it is governed by North Carolina law.

In reliance upon the Agreement, and upon the prior request of HVH, Transport Funding extended credit to Operators in order for the Operators to lease trucks that were financed through Transport Funding. These Operators would not have been able to lease trucks for the benefit of HVH but for Transport Funding extending credit.[13]

HVH agreed that in the event that any individual Operator defaulted under the terms of their lease with Transport Funding, HVH would guarantee a portion of the Lease and reimburse Transport Funding for certain expenses and costs as set forth within the terms of the Agreement.[14] Prior to extending any credit to each Operator, Transport Funding first required HVH to execute and deliver to Transport Funding an "Acknowledgement of Guaranty."[15]

---

[11]*Id.* (citing 17 James Wm. Moore et al., *Moore's Federal Practice* §110.04[1] (3d ed. 2010)).
[12]Doc. 1, Ex. A.
[13]*Id.* ¶ 7.
[14]*Id.* ¶ 9.
[15]*Id.* Ex. B.

3

On various dates and times, a number of the Operators defaulted under their lease agreement with Transport.[16] Upon the default of each and every such lease, Transport Funding notified HVH of the default and provided HVH with an opportunity to comply with HVH's obligations under the terms of the Agreement.[17] Transport Funding alleges it has fully complied with the terms and conditions under the Agreement, and that HVH failed to comply with its obligations under the Agreement, more specifically, it has failed to pay Transport Funding all sums that are owed under the Agreement.[18]

In every case where an Operator defaulted under its lease with Transport Funding, HVH requested or agreed to Transport Funding leasing the truck to another Operator subject to the terms of the Agreement.[19] Once an Operator defaulted in its obligations to Transport Funding under the lease, and the truck could not be leased to a successor Operator, HVH had the option to limit its liability under the Agreement by returning each such truck to the closest branch facility of Arrow Truck Sales, Inc. ("Arrow Truck"), as determined by Transport Funding and if each such truck "shall have been repaired, restored, reconditioned and delivered to Arrow Truck in trade term conditions ("Delivery Conditions")."[20] In the event the trucks delivered to Transport Funding did not comply with the Delivery Conditions, HVH was responsible for payment of all reasonable costs incurred by Transport Funding to bring the trucks into full compliance with the Delivery Conditions as "reasonably determined" by Transport Funding.[21] HVH failed and refused to deliver thirty-three (33) trucks to Transport Funding in compliance with the Delivery

---

[16]*Id.* ¶ 11.
[17]*Id.* ¶ 12.
[18]*Id.* ¶¶ 13–14.
[19]*Id.* ¶ 15.
[20]*Id.* ¶ 16.
[21]*Id.* ¶ 17.

Conditions and therefore, Transport Funding is required to incur the cost and expense to bring each truck into compliance with the Delivery Conditions.[22] Transport Funding has made numerous demands and requests upon HVH for payment in full of all sums owed under the Agreement, but HVH has failed and refused to make any payment to Transport Funding.[23]

As of January 21, 2017, the principal sum of $1,459,852.40 is due and owed by HVH to Transport Funding.[24] In addition, pursuant to the Agreement, HVH agreed that in the event of a default, HVH would pay all expenses incurred by Transport Funding to enforce the Agreement, including the payment of reasonable attorney fees and costs up through the date of HVH's payment to Transport Funding.[25]

**Wayne Miller Affidavit**

Wayne Miller is the Vice President of Safety for HVH.[26] HVH is a corporation whose principal place of business is Denver, Colorado.[27] HVH does not have any places of business, employees, or agents located in Kansas.[28] VFS Leasing has its principal place of business in Greensboro, North Carolina.[29] Upon information and belief, Arrow Truck has not had any branches in Kansas from 2014 through the present.[30] All Guaranty Acknowledgements were signed by HVH at their place of business in Denver, Colorado.[31] The Agreement did not require HVH to perform any of its duties in Kansas and HVH did not actually perform any of its duties

---

[22]*Id.* ¶ 18.
[23]*Id.* ¶ 19.
[24]*Id.* ¶ 20, Ex. C.
[25]*Id.* ¶ 20.
[26]Miller Aff., Doc. 5, Ex. A.
[27]*Id.* ¶ 2.
[28]*Id.*
[29]*Id.* ¶ 5.
[30]*Id.* ¶ 8.
[31]*Id.* ¶ 10.

under the Agreement in Kansas.[32] Any payments that HVH made under the Agreement were authorized in Colorado and paid by HVH sending a check to Transport Funding's P.O. Box in Philadelphia, Pennsylvania, or by electronic transfer from HVH's bank located in Minnesota to Transfer Funding's bank located in North Carolina.[33] After several truck Operators defaulted, HVH returned trucks to branches of Arrow Truck as required by the Agreement; none of those branches were located in Kansas.[34] Upon information and belief, none of the defaulting truck Operators were residents of Kansas.[35]

**Scott Carr Affidavit**

Scott Carr is the President and CEO of Transport Funding.[36] At the time of the Agreement, Transport Funding was located in Kansas City, Jackson County, Missouri.[37] All negotiations, correspondence, and communications relating to the formation of the Agreement were engaged in either in Denver or Kansas City, Missouri.[38] Transport Funding moved to Johnson County, Kansas in July 2015.[39] After July 2015, all communications between Transport Funding and HVH relating to the Agreement and the claims raised in the Complaint occurred at Transport Funding's office in Kansas.[40] After defaults occurred in the Agreement, Transport Funding called HVH from its office in Kansas and HVH contacted Transport in Kansas.[41] Transport Funding called HVH from its Kansas office regarding all defaults and requests for

---

[32]*Id.* ¶ 11.
[33]*Id.* ¶ 12.
[34]*Id.* ¶ 13.
[35]*Id.* ¶ 14.
[36]Carr Aff., Doc. 7, Ex. A.
[37]*Id.* ¶ 4.
[38]*Id.*
[39]*Id.* ¶ 5.
[40]*Id.* ¶ 6.
[41]*Id.* ¶ 7.

6

payment under the Agreement and HVH sent documents, emails, and made phone calls to Transport Funding in Kansas relating to the claims raised in the Complaint.[42] Several of the truck leases set forth in the Complaint that Transport Funding alleges are currently in default, involve trucks that are located in Arrow Trucking's Kansas City, Missouri location, and the leases for each of these trucks were entered into at that location.[43]

Pursuant to the Agreement, in the event of a default under any truck lease, HVH was required to return the truck to the nearest Arrow Truck location as directed by Transport Funding; each of the trucks in default were delivered by HVH to Arrow Truck's location in Kansas City, Missouri.[44] All repairs performed on the trucks returned to Arrow Truck's Kansas City location were performed by repair companies located in Kansas City, Missouri.[45] All witnesses relating to the repairs of the trucks, the costs of the repairs, and the necessity for the repairs are located in Kansas City, Missouri.[46] All employees of Arrow Trucking who will testify about the condition of the trucks when they were delivered by HVH to Arrow are located in Kansas City, Missouri.[47] All of the employees of Arrow Trucking who would have made representations as to the conditions of the trucks to the truck operators who leased trucks at Arrow Truck's Kansas City location are employed in Kansas City, Missouri.[48] The trucks were inspected and estimates were generated by Transport Funding's agent in Missouri.[49] Several of the documents relating to the lease of the trucks that are now in default were executed and/or

---

[42]*Id.* ¶ 8.
[43]*Id.* ¶ 10.
[44]*Id.* ¶ 11.
[45]*Id.* ¶ 13.
[46]*Id.* ¶ 15.
[47]*Id.* ¶ 16.
[48]*Id.* ¶ 18.
[49]*Id.* ¶ 19.

delivered to either Arrow Truck or Transport Funding's location in Kansas City, Missouri, or in the case of leases to replacement debtors entered into since July 2015, to Overland Park, Kansas.[50]

### III. Discussion

#### A. Motion to Dismiss

HVH argues that venue is improper in this case because Transport Funding cannot establish that a "substantial part of the events or omissions giving rise to the claim occurred" in this judicial district as required by § 1391(b)(2). The Court first looks at the nature of Transport Funding's claims and the acts or omissions underlying those claims. In this case, Transport Funding brings a breach of contract claim against HVH based on an alleged breach of the guarantee Agreement. Specifically, Transport Funding alleges that HVH failed and refused to deliver thirty-three (33) trucks to Transport Funding in compliance with the Delivery Conditions and therefore, Transport Funding is required to incur the cost and expense to bring each truck into compliance with the Delivery Conditions.

Next, the Court examines whether substantial events material to Transport Funding's claims occurred in this district. HVH argues that the evidence does not show that a substantial part of the events occurred in Kansas; while Transport Funding is a resident of the forum state, the Agreement was not negotiated, executed, performed, or breached in Kansas. Transport Funding alleges that HVH breached the Agreement by failing to make payments to Transport Funding and failing to return the truck in the required condition, neither of which occurred in Kansas. HVH notes that the Agreement is governed by a North Carolina choice of law provision.

---

[50]*Id.* ¶ 20.

Transport Funding argues that since July 2015, all communications between it and HVH relating to the Agreement and the claims raised in the Complaint occurred at Transport Funding's office in Kansas. Further, HVH contacted Transport Funding in Kansas on several occasions relating to its compliance with the Agreement; and sent documents, emails, and made phone calls to Transport Funding in Kansas relating to the alleged breach of contract. Further, HVH contacted Transport Funding in Kansas to request approval for Replacement Operators, and then HVH would send the applications for the Replacement Operators in default on their leases back to Transport Funding in Kansas.

HVH urges the Court to follow the District of Colorado's holding in *Fodor v. Hartman*,[51] where the court held that venue was improper in Colorado because the significant actions taken by defendant that gave rise to plaintiff's claims occurred in Pennsylvania and New York, not Colorado.[52] In that case, the court evaluated a breach of contract case where the plaintiff sought to establish venue based on telephone, mail, and email communications, as well as his own actions in performing the contract.[53] The plaintiff alleged that the defendant violated a concert tour and promotion contract by failing to secure concert dates or sponsorships, and filed suit in his home state of Colorado. The court found that defendant's communications to plaintiff in Colorado did not meet the "substantiality" requirement because the court was unable to discern if the content of those communications was related to the claims or merely tangential.[54] The court also rejected plaintiff's claim of injury in Colorado because he failed to explain how his reputation in Colorado was injured by the defendant.[55] The court also found there was no

---

[51] No. 05-cv-02539-PSF-BNB, 2006 WL 1488894 (D. Colo. May 30, 2006).
[52] *Id.* at *4.
[53] *Id.*
[54] *Id.*
[55] *Id.*

evidence that defendant breached the parties' contract in Colorado or that defendant committed any of the alleged acts in Colorado that gave rise to plaintiff's claims.[56]

The Court finds the facts here are similar to those present in *Fodor*. For communications to be sufficient to confer venue, they must be more than general business communications.[57] Formation of the Agreement is not at issue in this case; rather, the issue is whether HVH breached the Agreement by failing to make payments to Transport Funding and failing to return trucks in the required condition, neither of which occurred, or failed to occur, in Kansas. HVH performed the Agreement outside of Kansas and any alleged omissions that resulted in a breach also occurred outside of Kansas. HVH authorized payments from its place of business in Colorado. None of the trucks were delivered to Arrow Trucking in Kansas. The alleged breach had nothing to do with HVH sending communications or documents to Kansas. Transport Funding has provided no evidence or allegations to support venue in Kansas other than the fact that it resides in Kansas. Similar communications and events would exist in virtually any breach of contract case, and would nullify the decision of Congress not to make plaintiff's residence one of the options for a permissible venue.[58] Thus, it appears that all the significant acts undertaken by HVH that give rise to Transport Funding's claims occurred outside the District of Kansas, either in Colorado or Missouri, and venue under 28 U.S.C. § 1391(b)(2) would not lie in this district.

---

[56]*Id.*

[57]*Id.*

[58]*See Goff v. Hackett Stone Co.,* 185 F.3d 874, at *1 (Table), 1999 WL 397409 (10th Cir. June 17, 1999) (stating, "venue statutes are generally designed for the benefit of defendants, and in determining what events or omissions give rise to a claim, the focus [is] on relevant activities of the defendant, not the plaintiff.") (internal quotation omitted). *See also LeRoy v. Great W. United Corp.,* 443 U.S. 173, 183–84 (1994) ("In most instances, the purpose of statutorily specified venue is to protect the *defendant* against the risk that a plaintiff will select an unfair or inconvenient place of trial.") (footnote omitted; emphasis in original).

## B. Alternative Motion to Transfer Venue

If venue is improper, transfer of venue is governed by 28 U.S.C. § 1406, which states in relevant part: "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."[59] The phrase, "if it is in the interest of justice" grants the court discretion in making a decision to transfer an action or dismiss without prejudice.[60] "A court usually should transfer an action, rather than dismiss it for improper venue."[61]

Transport Funding requests that in the event the Court finds its chosen venue improper, the case be transferred to the Western District of Missouri. HVH objects, and urges that the facts of the case support venue in the District of Colorado. Assuming Missouri is a proper venue, a plaintiff's choice of venue on a request to transfer is given little or no deference.[62] As previously discussed, Transport Funding states facts sufficient to support venue in the District of Colorado. As such, in the interest of justice, the Court transfers this case to that district rather than order dismissal.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendants' Motion to Dismiss for Improper Venue (Doc. 4) is **DENIED**.

---

[59] 28 U.S.C. § 1406(a)(1).

[60] *Trujillo v. Williams,* 465 F.3d 1210, 1223 (10th Cir. 2006).

[61] *Lewis v. Prime Flight Aviation Servs.,* No. 10-2644-JTM, 2011 WL 744769, at *2 (D. Kan. Feb. 24, 2011) (quoting *Weber v. Ideker, Inc.,* 978 F. Supp. 1419, 1420 (D. Kan. 1997)).

[62] *See Coral Grp., Inc. v. Shell Oil Co.,* No. 09-2291-EFM, 2010 WL 527501, at *2 (D. Kan. Feb. 9, 2010) ("As a general rule, the plaintiff's choice of forum is given great deference. However, in certain circumstances, such as when the plaintiff expresses a willingness to transfer at least a part of their case to another forum, appears to be engaged in forum shopping, or attempts to transfer their case to another venue, the Court affords little to no deference to the plaintiff's choice of forum.") (internal footnotes omitted).

**IT IS FURTHER ORDERED** that Defendant's Motion to Change Venue (Doc. 4) is **GRANTED**, and this be transferred to the United States District Court for the District of Colorado. The clerk shall take all necessary steps to effectuate this transfer.

**IT IS SO ORDERED.**

Dated: September 22, 2017

                                          S/ Julie A. Robinson
                                          JULIE A. ROBINSON
                                          CHIEF UNITED STATES DISTRICT JUDGE